ALD-182                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-4147

KENNETH FORTUNE,
                                                 Appellant

v.

CARL HAMBERGER; Unit Manager; MARTIN DRAGOVICH, Superintendent;
THOMAS L. JAMES; Chief Grievance Coordinator; C.O. BASEMORE, Guard;
CAROL BAHER, Hearing Examiner; C. O. LITCHARD, Guard; C.O. WRIT, Sergeant;
C. O. HARMON, Sergeant; ROBERT STEVENS, Unit Manager; KAREN
PATTERSON, Accountant; JEAN W. SCOTT, Business Manager; DONALD L.
KECHNER, Superintendent; C. O. CRAIG, Guard; ROBERT S. BITNER, Chief Hearing
Examiner; JOHN ANDRADE, Hearing Examiner; SHARON M. BURK, Chief Grievance
Coordinator; LOUIS S. FOLINO, Superintendent; C. O. NICOLLETTI; LIEUTENANT
AGOSTINO

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 04-cv-377)
District Judge: Honorable Terrence F. McVerry

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
April 29, 2010

Before: SLOVITER, AMBRO and SMITH, Circuit Judges

(Opinion filed: May 7, 2010)

## OPINION

PER CURIAM

Kenneth Fortune, a pro se prisoner, appeals from a judgment entered by the District Court in favor of the Defendants. We will affirm. See I.O.P. 10.6.

I.

Fortune is currently in the custody of the Pennsylvania Department of Corrections (DOC) at the State Correctional Institution at Fayette (SCI-Fayette). Fortune brought an action in the District Court pursuant to 42 U.S.C. § 1983 against individuals employed by the DOC alleging events purported to have occurred while he was imprisoned at the State Correctional Institution at Greene (SCI-Greene) and the State Correctional Institution at Camp Hill (SCI-Camp Hill).

In his amended complaint, Fortune alleged that the Defendants violated his First, Fifth, Eighth, and Fourteenth Amendment rights. More specifically, he alleged that various individuals violated his rights through the following actions: 1) restricting the quantity of legal materials that he was able to maintain in his cell at any given time; 2) unlawfully opening legal mail outside of his presence; 3) attempting to coerce him into signing a privileged correspondence log on one date in order to receive one piece of legal mail; 4) ordering him to see a psychologist; 5) issuing him several false misconducts; 6) denying him showers, exercise, and hygiene materials; 7) subjecting him to a retaliatory

2

transfer; 8) improperly switching his migraine medication; 9) improperly deducting funds from his inmate account; 10) denying him "anticipated postage;" and 11) not permitting him to make sufficient copies of legal materials. Fortune also claims that some of these actions were retaliatory in nature.[1]

This case was extensively litigated before the District Court, which disposed of Fortune's claims in several thorough decisions. Following the filing of Fortune's amended complaint, the District Court granted Defendants' partial motion to dismiss for failure to state a claim. After discovery concluded, the District Court granted Defendants' motion for summary judgment as to all but one of Fortune's claims. Because the Defendants had not addressed the remaining claim in their summary judgment motion, the District Court granted them leave to file a second motion for summary judgment on that claim. In a September 28, 2009 decision, the District Court granted Defendants' second motion for summary judgment and entered final judgment in their favor. Fortune filed a timely notice of appeal.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Our review of the District Court's dismissals for failure to state a claim is plenary. Port Auth. of N.Y.

---

[1] Specifically, Fortune claims that the issuance of two misconducts; the denial of showers, exercise, and hygiene materials; his transfer to SCI-Greene; the switching of his migraine medicine; the removal of his excess legal documents; and the denial of "anticipated postage" were retaliatory in nature.

and N. J. v. Arcadian Corp., 189 F.3d 305, 311 (3d Cir. 1999). When considering a District Court's grant of a motion to dismiss under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

We review a District Court's grant of summary judgment de novo. Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). Summary judgment is proper only if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Carrasca v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). If a moving party demonstrates that no genuine issue of material fact exists, the non-moving party must set forth specific facts showing a genuine material issue for trial and may not rest upon the mere allegations or denials of its pleadings. Connors v. Fawn Mining Corp., 30 F.3d 483, 489 (3d Cir. 1994). We will affirm on any ground supported by the record. See, e.g., Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999). After reviewing the record on appeal and the District Court's thorough decisions, we conclude that the District Court committed no reversible error in disposing of Fortune's claims.

Defendants' Partial Motion to Dismiss

First, the District Court correctly dismissed, on statute of limitations grounds,

4

Fortune's claim that the Defendants improperly seized his "core legal materials" in 1999. Fortune asserted that because his materials were taken, he was unable to adequately prepare for a then-pending state court action.

A claim is properly dismissed under Rule 12(b)(6) on statute of limitations grounds if the untimeliness of the claim is apparent on its face. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994). While 42 U.S.C. § 1983 does not set forth a limitations period, "federal courts must look to the statute of limitations governing analogous state causes of actions." Urrutia v. Harrisburg County Police Dep't, 91 F.3d 451, 457 n.9 (3d Cir. 1996).

Here, as the District Court explained, the applicable statute of limitations is that governing personal injury claims in Pennsylvania. See Wallace v. Kato, 549 U.S. 384, 387 (2007). Therefore, Fortune had two years from the time his cause of action accrued to file his complaint. See 42 Pa. Cons. Stat. Ann. § 5524(2). A § 1983 cause of action accrues on the date when a plaintiff knew or should have known his rights had been violated. See Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991). Fortune knew or should have known that his materials were taken in 1999. However, he did not file his complaint in the District Court until March 2004. Accordingly, we agree that the claim is untimely and the District Court properly dismissed it on that basis.

Second, we conclude that the District Court properly dismissed Defendants Hamberger, Dragovich, James, Baker, Bitner, Stevens, Andrade, and Folino from the

5

action as Fortune's failure in his amended complaint to allege personal involvement on the part of those individuals was fatal to the claims against them.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Defendants' Motions for Summary Judgment

Access to Courts

As mentioned, Fortune's amended complaint contained numerous allegations that various DOC employees acted in ways that frustrated his right of access to the courts. More specifically, he alleged, inter alia, that his "core legal materials" were taken and/or restricted,[2] he was denied anticipated postage, and an informal appellate brief was taken from him for brief periods of time.

Prisoners have a fundamental right to access the courts.  Lewis v. Casey, 518 U.S. 343, 346 (1996).  However, a prisoner making an access-to-courts claim is required to show that the denial of access caused actual injury.  Id. at 352-54.  Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts.  Christopher v. Harbury, 536 U.S. 403, 415 (2002).  We agree with the District Court that Fortune failed on summary judgment to show any actual injury resulting from the alleged denial of access to the courts.

Free Speech Claim

---

[2]As discussed earlier, Fortune's claim that Defendants confiscated his "core legal materials" in violation of his constitutional rights is barred by the statute of limitations.

6

The District Court also correctly granted summary judgment on Fortune's claim that the Defendants violated his First Amendment right to free speech by opening his legal mail outside of his presence. Fortune claims that on one occasion, in September 2005, Defendants Nicolleti and Agostino opened his legal mail outside of his presence and then conspired to have him sign a back-dated log so that Fortune could not later file a grievance against them for doing so. The District Court correctly determined that a single instance of interference with an inmate's mail is not sufficient to constitute a First Amendment violation. See Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995), abrogated on other grounds by Lewis v. Casey, 518 U.S. 343 (1996).

Retaliation Claims

We also agree with the District Court that there is no genuine issue of material fact regarding Fortune's retaliation claims. Fortune claims that several Defendants retaliated against him in various ways for filing grievances and lawsuits against them. To show retaliation, a prisoner must demonstrate that he was engaged in constitutionally protected conduct, that prison officials caused him to suffer "adverse action," and that his constitutionally protected conduct was a motivating factor in the officials' decision to discipline him. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002) (citing Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)). Prison officials may prevail by proving that they would have made the same decision even if the prisoner was not engaging in constitutionally protected conduct. Id.

7

Fortune claimed that Defendants Basemore and Wirt retaliated against him for filing various lawsuits against the DOC by issuing him two separate misconducts in June 2002 – nos. A364867 and A364873. However, the record shows that misconduct number A364867 was issued as a result of Fortune's refusal to obey an order to report to the office of a psychologist, pursuant to a mandatory pass. At the misconduct hearing, Fortune stated that he did not want to go to the appointment because he had a right to refuse medical treatment. The hearing examiner found Fortune guilty of refusing to obey a lawful order to go to an appointment. Thus, the misconduct was not issued due to Fortune's filing of a prior grievance or lawsuit, but instead for his failure to comply with an order. Similarly, misconduct number A364873 was issued to Fortune after he threatened an employee with bodily harm and used abusive language. Apparently, Fortune believed that he was missing property and accused the prison employee of taking the property while he was in confined in the Restricted Housing Unit (RHU). At the misconduct hearing, the examiner found Fortune guilty of using abusive language, but dismissed the charge for threatening an employee with bodily harm.

While the filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity, see Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981), the District Court correctly determined that there was no causal nexus between the issuing of misconducts in June 2002 and Fortune's pending lawsuits and/or grievances. The misconducts were issued because he violated prison regulations. See Carter, 292

8

F.3d at 158.

The District Court also properly granted summary judgment on Fortune's claim that Defendants Litchard, Craig, and Harmon retaliated against him by removing eight boxes of legal documents while he was in confined in the RHU in June 2002. On the date that the boxes were confiscated, he was told that pursuant to DOC policy, he was allowed only to keep his personal property, including legal records, and that the items could be stored in one foot locker and two record center boxes. Upon Fortune's refusal to sort through his materials, the excess boxes were confiscated. As the District Court pointed out, the Defendants were in compliance with procedures outlined in DC-ADM 815 when they confiscated Fortune's excess boxes. Fortune did not challenge the validity of that policy. Thus, because the Defendants limiting of Fortune's personal property was dictated by established DOC policy, and because Fortune's claim of retaliation is unsupported by any record evidence, Defendants were properly granted summary judgment.[3]

Regarding Fortune's transfer to SCI-Greene in August 2002, there was sufficient uncontroverted evidence presented that the transfer occurred due to his history of

---

[3]The District Court also properly granted summary judgment in favor of Defendants on Fortune's claims that he was denied "anticipated postage," access to the library, and the ability to make copies of certain legal documents in retaliation for his filing of various grievances against them. The record reflects that Defendants' decisions concerning the appropriateness of Fortune's postage and his ability to access the library and make copies were all made in accordance with established DOC policy. Again, Fortune did not challenge the validity of those DOC policies.

9

assaultive behavior and his poor prison adjustment at SCI-Camp Hill. Thus, because the Defendants demonstrated a legitimate penological reason for the transfer, Rauser, 241 F.32 at 333, they were entitled to summary judgment on the claim.

Eighth Amendment Claims

Fortune's alleges while he was confined in the RHU from June 3, 2002 until June 18, 2002, Defendants Litchard, Craig, and Harmon denied him showers, exercise, and hygienic materials in violation of his Eighth Amendment rights. The relevant Eighth Amendment inquiry is whether the alleged deprivation is "sufficiently serious" and whether the inmate has been deprived of the "minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). This requires an inmate to show that "he is incarcerated under conditions posing a substantial risk of serious harm," and that prison officials demonstrated a "deliberate indifference" to his health or safety. Id.

Fortune has not provided any evidence that might raise a genuine issue of material fact regarding the condition of his confinement in the RHU. As mentioned, Fortune complained of his inability to adequately shower and exercise for a period of fifteen days. Although it is not clear how many times Fortune believes that he should have been permitted to engage in those activities in addition to the time he was already given to do so, he does not allege that he suffered any harm as a result of the denial of additional showers and exercise.

Accordingly, we agree with the District Court that Fortune has not set forth facts demonstrating that the alleged denial of adequate showers and exercise during his brief stay in the RHU was sufficiently serious to deprive him of the "minimal civilized measure of life's necessities." Id. Even a minimal provision of time for exercise and recreation may satisfy constitutional requirements. See, e.g., Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992) (forty-five minutes of exercise per week not constitutionally infirm); Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989) (the denial of outdoor recreation for thirteen days does not constitute cruel and unusual punishment). Thus, we agree with the District Court that Fortune's alleged harm was insufficiently serious to implicate the Eighth Amendment.

Fortune also claims that Defendants violated his Eighth Amendment rights by changing his migraine medication from Cafergot to Midrin, thus failing to provide him with adequate medical care. To establish a violation of the right to adequate medical care, a plaintiff must show a serious medical need and acts or omissions by prison officials that indicated a deliberate indifference to that need. Estelle v. Gamble, 429 U.S. 97, 106 (1976). Fortune failed to provide evidence suggesting that the Defendants were deliberately indifferent to his medical needs. While Fortune argues that Cafergot was more effective in treating his symptoms, the fact that he received a medication other than Cafergot does not amount to a constitutional violation. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) (doctor's choice of one drug over another is not actionable).

11

Moreover, there is no indication that the decision to provide Fortune with a medication other than Cafergot was based on an ulterior motive beyond routine patient care within the confines of the prison's policies.[4]

### Fourteenth Amendment Claims

Fortune also claims that his due process rights were violated as a result of his placement in the RHU on two separate occasions in June and July 2002. As mentioned earlier, Fortune was issued two separate misconducts in June 2002. The first resulted in fifteen days of confinement in the RHU. As a result of the second misconduct, he was placed in the RHU for an additional thirty days. The District Court correctly noted that an inmate's due process rights are not triggered unless the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Here, Fortune was placed in RHU for a total of forty-five days. We have made clear that this type of confinement does not constitute an "atypical and significant hardship" so as to trigger due process rights. See Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (finding that fifteen months in segregation was not an atypical and significant hardship).

The District Court also correctly granted summary judgment in favor of

---

[4]To the extent Fortune also claims that he was denied adequate access to showers and exercise and that his medication was changed in retaliation for filing grievances, we agree with the District Court that Fortune has failed to set forth any evidence suggesting that was the case.

12

Defendants on Fortune's claim that the misconduct reports, which resulted in his disciplinary custody in the RHU, were falsified. As discussed above, Fortune was not subjected to "atypical and significant hardship" when he was placed in RHU following his misconduct charge. Id. Therefore, because he was not deprived of a protected liberty interest, his challenge to the misconduct charge is actionable only under § 1983 if Defendants issued the misconduct in retaliation for his having exercised a constitutional right. See Rauser, 241 F.3d at 333. As we discussed earlier, Fortune did not present any facts that would establish a retaliatory motive behind either misconduct charge. Summary judgment was therefore appropriate.

### Deductions from Fortune's Inmate Account

Lastly, the District Court properly granted Defendants second motion for summary judgment on Fortune's remaining claim that funds were improperly deducted from his inmate account. Fortune had argued that Defendants Patterson and Scott violated his due process rights, as well as the Prison Litigation Reform Act, 28 U.S.C. § 1915, by improperly deducting monies from his inmate account in 2001.[5] Specifically, he claimed that they improperly withdrew $1,310.03 from his account for the payment of fines, court costs and/or legal fees in connection with two earlier federal lawsuits.

We agree with the District Court that Fortune cannot sustain this claim under § 1983. Fortune failed to set forth any evidence suggesting that Defendants Patterson and

---

[5]Fortune also claimed that the funds were being deducted at an unlawful rate.

13

Scott had any personal involvement in deducting money from his account. In fact, the record reflects the deductions were made by an individual not named in the instant lawsuit who was, at that time, employed at SCI-Camp Hill. Defendants Patterson and Scott were employed at SCI-Greene. Furthermore, there is no evidence demonstrating that they were personally involved in assessing the amount of money appropriate to be deducted from Fortune's account. Because Fortune did not demonstrate any facts, if proven true, that would show that Defendants Patterson and Scott were involved in the deduction of funds from his account, his claims against them cannot be sustained under § 1983. See Rode, 845 F.2d at 1207.

As Fortune's appeal presents no substantial question, we will summarily affirm. See Third Cir. LAR 27.4; I.O.P. 10.6. Fortune's motion for appointment of counsel is denied.