NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3853
_____

MIGUEL JOSE GARCIA,
                                        Appellant
v.

JANET KIMMELL; WILLIAM COLE; W. WOODS; CRAWFORD; R. GILKEY;
MICHAEL A. HARLOW; JEFFREY A. BEARD; THE PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 08-CV-01236)
District Judge:  Honorable Arthur J. Schwab

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 18, 2010
Before:  SLOVITER, CHAGARES and WEIS, Circuit Judges
(Opinion filed: May 26, 2010)

_____

OPINION
_____

PER CURIAM.

        Miguel Jose Garcia appeals from an order of the United States District

Court for the Western District of Pennsylvania, which granted the defendants' motion for

1

summary judgment with regard to Garcia's civil rights complaint. We will affirm the District Court's judgment in its entirety.

Miguel Jose Garcia filed in state court a civil rights complaint against Pennsylvania correctional officers and employees at a Pennsylvania prison, SCI-Mercer, where he was confined for some time. Garcia's complaint contained these claims: Count I, Retaliation and Discrimination (prison officials refused to consider him for outside job clearance in retaliation for Garcia filing grievances); Count Two, Equal Protection/Discrimination/Due Process (prison officials treated automotive students differently than barbers and culinary students); Count Three, Garcia was denied "state soap," (an Eighth Amendment violation); Count Four, Denial of legal supplies; Count Five Discrimination/Equal Protection/Destruction of Personal Property Claim; and Count Six, which alleged violations of state law. The Defendants removed the action to federal court. After some limited discovery, both sides filed summary judgment motions. The District Court granted the defendants' motion and denied Garcia's motion, and Garcia timely appealed.

Garcia pursues only three claims on appeal: a claim that the prison's decisions to wait almost a year to consider him for his outside job clearance and to move him to inferior housing were retaliatory; a claim that the prison's failure to transfer him to another prison to allow him to take his automotive certification test violated equal protection because culinary and barber students were transferred to take their tests; and

2

the prison's decision to deny his requests for state soap constituted cruel and unusual punishment.

**I.**

We have jurisdiction over the appeal under 28 U.S.C. § 1291 and exercise plenary review over the District Court's decision to grant summary judgment. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995). However, a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

**II.**[1]

To show that prison officials retaliated against a prisoner for exercising his constitutional rights, the prisoner must plead three elements: 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered "adverse action" at the hands of prison officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take adverse action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Once he has made his prima facie case, the burden shifts to the defendant to prove by a preponderance of the evidence that it "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002) (internal quotation and citation omitted).

Garcia claims that defendants denied him outside clearance for work and moved him to inferior dormitory-type accommodations in retaliation for his filing

---

[1] Before a prisoner can bring a civil rights claim challenging prison conditions, he must exhaust administrative remedies. 42 U.S.C. § 1997e(a); Spruill v. Gillis, 372 F.3d 218, 226-27 (3d Cir. 2004). Proper exhaustion in Pennsylvania requires completion of a three-part procedure; initial review, appeal, and final review. Spruill, 372 F.3d at 232. Failure to exhaust is an affirmative defense to be pleaded by the defendant. Jones v. Bock, 549 U.S. 199 (2007); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Although defendants argued in the District Court that Count Five of Garcia's complaint was not exhausted, it did not argue failure to exhaust as a defense to any of the claims at issue on appeal here. Thus, although the record does not reflect that Garcia pursued all three administrative levels for his retaliation and equal protection claims, we will consider them on the merits, along with his exhausted Eighth Amendment claim.

4

grievances.[2]

The District Court found that Garcia engaged in constitutionally protected activity by filing prison grievances. The Court did not decide whether the actions taken against Garcia would constitute "adverse action,"[3] but decided that the claims failed because defendants' actions were taken "for reasons reasonably related to a legitimate penological interest." Dist. Ct. Op. at 15.

Garcia alleged in his complaint that his counselor, Defendant Kimmel, needed to interview him so he could be cleared to work outside the prison in an auto shop. Garcia was not happy with an initial meeting with Kimmel in January 2008, and he filed a grievance alleging that she was not following prison policy. According to Garcia, Kimmel thereafter refused to answer any of his request slips, and when he finally met with her about two weeks later, she stated that because Garcia had filed a grievance against her, she would not "staff" him until September, about eight months later. Garcia filed another grievance, complaining of retaliation, and about two weeks later, he was moved "to an old, once condemned, dilapidated dorm style trailor [sic]." Complaint, Dkt.

---

[2] The District Court construed Garcia's complaint as tying all the claims to retaliation (e.g., he was denied soap in retaliation for filing grievances, etc.), but the only claims that Garcia ties to retaliation on appeal are the claim that he was not timely "staffed," (interviewed for outside clearance) and the claim that he was transferred to inferior housing.

[3] To constitute "adverse action" for a retaliation claim, the action must be "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." See Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

5

#1-2, at ¶ 42.

Taking Garcia's allegations as true, and construing the evidence in the light most favorable to him, we find that Garcia presented evidence indicating that his filing of grievances was a substantial or motivating factor in the decision to delay his "staffing" for outside clearance. However, we agree with the District Court that defendant Kimmel's statement that she needed to get to know him as an inmate to see how he would adjust before granting him clearance is related to a legitimate penological interest.[4] The District Court thus properly granted summary judgment on this claim. See Rauser, 241 F.3d at 334 (even if "a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest").

As to his housing transfer, it is not clear that Garcia established any link between his protected activity (filing grievances), and the allegedly adverse action.[5]

---

[4] For the first time on appeal, Garcia attempts to refute the defendants' reason for delaying his clearance interview by alleging that he was employed in an outside auto shop as a car washer in May 2008. He thus suggests that the defendants' statement that they needed to "get to know him" must have been pretextual. As this Court "cannot consider material on appeal that is outside of the district court record," we decline to consider the argument. In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts, 913 F.2d 89, 96 (3d Cir. 1990).

[5] Garcia's bald assertion that Defendant Cole, the Unit Manager who apparently ordered the transfer, "conspired" with Defendant Kimmel and with Defendant Crawford (Unit Block Officer), need not be credited. Podobnik, 409 F.3d at 594.

Further, the defendants noted that Garcia's "Z-Code" status, which allowed him to have a single cell due to his mental health issues, had been removed in August 2007 before he was transferred to SCI-Mercer, at least in part because of his refusal to meet with the Psychology Department regarding his Z-Code status. Exhibit 10 to Defendants' summary judgment motion, dkt. #18-5, at 4 of 20. It was thus permissible under prison policy for SCI-Mercer to place Garcia in dormitory-style housing. In response to his grievance, Deputy Ruffo explained that "[h]ousing assignments are based on various factors (i.e.: security, medical and programming needs)," and that when those factors were considered in Garcia's case, they supported his placement in dormitory-style housing. Exhibit 11 to Defendants' summary judgment motion, dkt. #18-5, at 7 of 20. Garcia did not meet his burden of showing that his housing transfer was retaliatory.

**III.**

We likewise hold that the District Court properly granted summary judgment on Garcia's equal protection claims. Garcia obtained an "incentive-based transfer" to SCI- Mercer, and apparently believed that this transfer would help him advance in his automotive training After being transferred to Mercer, Garcia learned that an automotive certification he possessed was about to expire. Mercer did not offer the testing he needed. He asked for a transfer in order to take a test to be re-certified, but the transfer was denied because he was not eligible so soon for another incentive-based transfer. His Equal Protection claim stated that barber and culinary students were allowed

7

such transfers while he was not, but he did not provide any evidence that barbers and culinary students were allowed more than one incentive-based transfer within a year. Because prisoners are not a suspect class, prison officials may treat inmates differently so long as decisions are rationally related to a legitimate state interest. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440-41 (1985). The prison's requirement that Garcia wait a year before another incentive-based transfer was rationally related to legitimate state interests. Further, Garcia did not show that prison officials acted with any discriminatory purpose in denying him a transfer. City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found., 538 U.S. 188, 194 (2003).

**IV.**

As to Garcia's Eighth Amendment claim, prison conditions may violate the Eighth Amendment proscription against cruel and unusual punishment where inmates are deprived of the minimal civilized measure of life's necessities. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Courts have held that those minimal necessities include provision for basic hygiene. See e.g., Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir.1996) (refusal to provide toothpaste, leading to gums bleeding and receding and tooth decay states claim for Eighth Amendment claim); Young v. Quinlan, 960 F.2d 351, 363 (3d Cir.1992) (requiring prisoner to request permission to wash hands, receive toilet paper, or drink water states an Eighth Amendment claim). The deprivation alleged must also be "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

8

Garcia claims that inmates were all supposed to get "personal hygiene soap," also called "state soap," free of charge, but that on April 25, 2008, his unit manager, Defendant Woods, stopped distribution of soap to inmates on K-block, and also stated that indigent inmates would only get one bar of state soap per month. Garcia sent an inmate request to staff on that same date, claiming that he was indigent and asking for state soap, but he was denied soap. Having insufficient funds to purchase soap, he then had to use shampoo for 39 days to clean his skin. He developed skin irritations, rash and eczema on his hands, feet, elbows, knees, chest and back and required medical treatment on five different occasions, and required three different creams and ointments and three different oral medications for treatment. Complaint, Dkt. #1-2, at 18-20; Garcia's Motion for Summary Judgment, Dkt. #23-8, Exh. G.

Garcia filed a grievance concerning the denial of soap. The grievance and initial response by Deputy Ruffo are not in the record, but Garcia's complaint states that he filed the grievance on May 1, 2008. The record does contain a short decision on appeal stating that the grievance and Deputy Ruffo's response dated May 8, 2008 were reviewed, and then states in pertinent part:

> Deputy Ruffo's response was not inaccurate or inept. We will provide soap to inmates who are classified as indigent. I found that no one discriminated against nor mistreated you in any way.

Defendants' summary judgment motion, Dkt. #18-5, p. 11, Exh. 12. The same exhibit also contains a decision from the Secretary's Office of Inmate Grievances and Appeals,

9

noting that the "record reflects that Deputy Ruffo reviewed your account." Id. at p. 13. The decision then notes that "an inmate is deemed indigent if the combined balance of his/her facility account and any other accounts are [sic] $10.00 or less at the time [sic] during the 30 days preceding the date on which the inmate submits a request to a person designated by the Facility Manager." The decision states that Garcia was "not indigent when [he] filed the grievance." Id.

The Office of Inmate Grievances and Appeals decision quoted above misstates the definition of "Indigent Inmate," which is set forth in DC-ADM 803 ("Inmate Mail and Incoming Publications Procedures Manual"). That definition, as the District Court correctly noted, states that an inmate is indigent "if the combined balances of his/her facility account and any other accounts are $10.00 or less at all times during the 30 days preceding the date on which the inmate submits a request . . . ." (Dkt. #18-2, p. 27) (emphasis added).

Garcia requested state soap free of charge due to his claimed indigent status on April 25, 2008. However, Garcia's inmate account balance statement demonstrably exceeded $10.00 on a number of occasions during the 30 days preceding April 25, 2008. Accordingly, Garcia was not indigent and was free to purchase a bar of soap if he so chose. The District Court did not err in concluding that Defendants based their decision denying Garcia free state soap "on legitimate penological budget concerns" nor in granting judgment to Defendants as a matter of law on this issue.

10

For the foregoing reasons, the District Court's judgment will be affirmed.