**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———————————

No. 11-3996
———————————

MICHAEL E. SILUK, JR.,

Appellant

v.

CATHERINE MERWIN,
Director of Perry County Domestic Relations Section

———————————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(Civil Action No. 1-11-cv-01654)
District Judge:  Honorable Judge Christopher C. Conner

———————————

Argued:  May 21, 2014

Before:  MCKEE, Chief Judge
and CHAGARES, GARTH, Circuit Judges

(Opinion filed: April 10, 2015)

Paige H. Forster (argued)[1]
Patrick M. Emery, Esq.
Reed Smith LLP
225 Fifth Avenue
Pittsburgh, PA 15222

Gregory B. Jordan, Esq.
PNC
30th Floor
249 Fifth Avenue
One PNC Plaza
Pittsburgh, PA 15222

       Counsel for Appellant

Jeffrey E. Sandberg (argued)
United States Department of Justice
Appellate Section, Civil Division
Room 7214
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

       Counsel for Amicus Curiae

────────────

## OPINION OF THE COURT

────────────

McKEE, <u>Chief Judge</u>

    We are asked to interpret provisions of the Prison Litigation Reform Act ("PLRA") requiring federal prisons to withdraw certain amounts from prisoner trust accounts to pay

---

[1] The attorneys for the appellant are appearing *pro bono* following a prior order granting appellant's motion to proceed *in forma pauperis*. The judges of this court express our gratitude to those attorneys for accepting this matter *pro bono* and for the quality of their representation of their client. We also thank Reed Smith, LLP and PNC for permitting them to offer their service. Lawyers who act *pro bono* fulfill the highest service that members of the bar can offer to needy parties and to the legal profession.

2

court filing fees. Although the amount of money involved may seem insignificant, the issue is of the utmost importance because it impacts indigent prisoners' access to the courts and it has resulted in a conflict among the Courts of Appeals.[2]

Under the PLRA,[3] a prisoner who files a civil complaint or an appeal in the federal courts is required to pay the full amount of the filing fee even if s/he is filing *in forma pauperis* ("IFP").[4] Pursuant to 28 U.S.C. § 1915(b)(2), after making an initial payment, a prisoner must make monthly payments in the amount of 20 percent of the preceding month's income until the filing fee is paid.

Michael Siluk is an indigent state prisoner who was allowed to file IFP in the district court and this Court. He currently owes a filing fee to both courts ($350 to the Clerk of the District Court and $505 to the Clerk of this Court for his appeal). Siluk argues that § 1915(b)(2) only requires a 20-percent deduction from his prison account each month until both fees are paid, and that the deductions should be made in the order in which they were incurred (referred to as "sequential collection," "sequential recoupment," or "per inmate approach"). The government argues that § 1915(b) requires that a monthly 20-percent deduction must be made concurrently for fees owed in both courts until the fees are paid (referred to as "concurrent recoupment," "simultaneous recoupment," or "per case approach"). The latter interpretation would result in a 40-percent deduction from

---

[2] *See infra* notes 18 and 26.

[3] Title VIII of Pub. L. No. 104-134, 100 Stat. 1321 (1996), amending 28 U.S.C. § 1915 *et seq.*

[4] 28 U.S.C. § 1915(b)(1). The IFP statute "is designed to ensure that indigent litigants have *meaningful* access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (emphasis added). "Congress enacted the *in forma pauperis* statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation." *Deutsch v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995).

Siluk's account each month that would continue until both fees are completely paid.

On January 11, 2013 this Court entered an order which among other things granted Siluk's motion to proceed IFP; referred the petition to combine payments to a merits panel; and directed the Clerk of the Court to appoint *pro bono* counsel on behalf of Siluk to "address whether the Prison Litigation Reform Act requires recoupment of multiple encumbrances sequentially or simultaneously." For the reasons that follow, we conclude that Congress intended to cap the monthly debit for filing fees at 20 percent of a prisoner's monthly income, even where, as here, an inmate owes more than one filing fee.[5]

---

[5] We have jurisdiction to review a district court's final order under 28 U.S.C. § 1291. Although Siluk is appealing the order dismissing his complaint under Rule 12(b)(6), as well as the court's denial of his motion to consolidate court fees, we only need to discuss the latter issue. The District Court thoroughly and carefully explained that Siluk's claim against an officer of the Commonwealth of Pennsylvania is barred by the Eleventh Amendment of the United States Constitution.

The Eleventh Amendment "bar[s] suits for monetary damages by private parties in federal court against a state or against state agencies. It also bars a suit against state officials in their official capacity, because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury." *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990) (internal citations omitted).

"All courts and agencies of the [Pennsylvania unified judicial system] are part of the Commonwealth government . . . [and] entitled to Eleventh Amendment immunity." *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (citation omitted); Pa. Const. art. V, § 1. County domestic relations sections are part of the unified judicial system. 42 PA. CONS. STAT. ANN. § 961. Accordingly, Merwin, in her official capacity as Director of the Perry County Domestic Relations Section, is entitled to Eleventh Amendment immunity. *Melo*, 912 F.2d at 6.

4

## I. Factual Background

When this suit was filed, Siluk was an inmate at the State Correctional Institution at Rockview ("SCI Rockview"). He had filed various actions in state court claiming that state authorities had wrongfully intercepted his federal income tax refund and applied it to a child-support arrearage he allegedly owed. After Siluk's state court litigation proved unsuccessful, he filed this *pro se* complaint in federal district court, alleging that Catherine Merwin -- the Director of Perry County Domestic Relations Section -- had deprived him of his federal tax refund, in violation of the Fourteenth Amendment. The District Court granted Siluk's motion to proceed IFP and ordered the collection of an initial partial filing fee, followed by monthly installments as required by § 1915(b).[6] The court subsequently dismissed Siluk's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[7]

Siluk appealed and applied to proceed IFP before us. He also filed a motion to combine payment of his filing fees which the district court denied. Siluk seeks to make one combined payment of 20 percent of his prison account deposits, rather than a 40-percent deduction (20 percent for each fee owed), as urged by the government. The sequential collection he requests would postpone collection of the filing fee for this appeal until after his filing fee has been completely paid to the district court.

Siluk maintains that *sequentially* debiting his inmate account will leave him with sufficient funds to maintain a minimum quality of life that would otherwise be jeopardized. He purportedly lives on prison wages of around $40.00 a month after the 20-percent deduction of the District Court filing fee. According to Siluk, he is required to pay for such items as: "soap, shampoo, razors, [and] deodorant" to

---

[6] As of the filing of his appellate brief, SCI Rockview has remitted eleven partial payments, totaling $119.98, toward Siluk's $350.00 District Court filing fee. Appx. 68-88.

[7] *See Siluk v. Merwin*, No. 11-1654, 2011 WL 4738147 (M.D. Pa. Sept. 16, 2011).

maintain basic hygiene.[8]  Siluk must also pay for the cost of proceeding in this matter.  He claims that those costs include such incidentals as "paper, pens, copies, carbon paper, [and] mail."[9]

## II. Statutory Background

Under 28 U.SC. § 1915, federal courts are authorized to allow indigent persons, including prisoners, to pursue litigation without pre-paying fees and costs.[10]  Congress enacted the IFP statute "to ensure that administrative court costs and filing fees . . . would not prevent indigent persons from pursuing meaningful litigation."[11]  Section 1915 was

---

[8] Appx. at 47 (Pet. To Combine Filing Fees at ¶ 4); *see also id.* at 52-53 (Prison Account Statement, reflecting commissary charges).

[9] *Id.*; *see also id.* (Prison Account Statement, reflecting

postage charges).

[10] The relevant text of § 1915 is as follows:

> (b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.  The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent . . . .
>
> (2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915.

[11] *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312 (3d Cir. 2001) (internal quotation marks omitted), *cert. denied*, 533 U.S. 953

6

amended by the PLRA, "largely in response to concerns about the heavy volume of frivolous prisoner litigation in the federal courts."[12]  Prior to the passage of the PLRA, courts could waive filing fees entirely.[13]  However, in enacting § 1915(b)(1), Congress required that all indigent prisoners filing civil actions or appeals eventually "pay the full amount of a filing fee."[14]

Section 1915(b) allows prisoners who qualify for IFP status to make an initial partial payment, followed by monthly payments against the remaining balance.[15]  Section 1915(b)(1) requires an initial debit for partial payment of outstanding court fees when the funds in the prisoner's account equal "20 percent of the greater of . . . (A) the average monthly deposits to the prisoner's account; or (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the

---

(2001); *see also Denton v. Hernandez*, 504 U.S. 25, 31 (1992).

[12] *Abdul-Akbar*, 239 F.3d at 312; *see also* 141 Cong. Rec. S14,408-01, S14413 (daily ed. Sept. 27, 1995) (statement of Sen. Dole) (explaining that the number of prisoner suits filed "has grown astronomically -- from 6,600 in 1975 to more than 39,000 in 1994" ).  The increase correlates with policies that resulted in mass incarceration.  During this same period, the prison population underwent a dramatic increase.  Just over 500,000 people were incarcerated in prisons or jails in 1980; over 1.3 million were incarcerated in 1993.  *See* Allen J. Beck & Darrell K. Gilliard, Bureau of Justice Statistics, NCJ 151654, Prisoners in 1994, at 1 (1995), *available at* http://bjs.ojp.usdoj.gov/content/pub/pdf/Pi94.pdf.

[13] *Id.* at 311-12 ("[P]risoners easily obtained I.F.P. status and hence were not subject to the same economic disincentives to filing meritless cases that face other civil litigants.").

[14] 28 U.S.C. § 1915(b)(1).

[15] *See Santana v. United States*, 98 F.3d 752, 754 (3d Cir. 1996).

7

complaint or notice of appeal."[16]  Section 1915(b)(2) provides that, after the initial partial payment, the inmate must make "monthly payments of 20 percent of the preceding month's income" whenever the account exceeds $10.00.[17]  The prison where the inmate is housed is responsible for withdrawing this money and "forward[ing] payments from the prisoner's account to the clerk of the court."[18]  This monthly payment scheme continues until the filing fee is fully discharged.[19]

This scheme is relatively clear when an inmate only owes one filing fee.  However, it is not clear how the deductions should be made when a prisoner owes more than one filing fee arising from multiple lawsuits or appeals of a single lawsuit.[20]

---

[16] 28 U.S.C. § 1915(b)(1).  Prisoners need not make this initial partial payment if they do not have the available funds. *See id.* § 1915(b)(4) (requiring collection of the initial partial filing fee only when sufficient funds exist).

[17] *Id.* § 1915(b)(2).

[18] *Id.*

[19] *Id.*

[20] This issue is a matter of first impression for this Court, and there is a split of authority among our sister courts of appeals. The government argues that we have tacitly accepted the majority view of our sister courts of appeals, which is that the PLRA requires simultaneous recoupment. *See Ray v. Reed*, 680 F.3d 841, 841 (3d Cir. 2012) (reinstating the court's prior order requiring simultaneous recoupment, where a prisoner owed multiple filing fees and sought to limit his monthly obligations to a single 20-percent payment).  However, the government fails to note that *Fortune v. Patterson*, No. 04-377, 2009 WL 3166274, at *8 (W.D. Pa. Sept. 28, 2009), *aff'd Fortune v. Hamberger*, 379 F. App'x 116 (3d Cir. 2010) (per curiam) (unpublished), surmised that deducting filing fees at a rate greater than 20 percent was unlawful under the PLRA or § 1915.

8

In this case, Siluk faces the prospect of paying two fees: (1) the $350 district court filing fee that he incurred by filing his pro se complaint; and (2) the $505 fee he incurred in this court for pursuing an appeal of the district court judgment. All parties agree that Siluk must pay both fees eventually and that these fees should be deducted from his inmate account; however, there is a highly contested legal question as to the *rate* at which these fees should be paid.

In his petition, Siluk requests that this Court order that 20 percent of his account balance, rather than 40 percent of his account balance, should be deducted each month, toward the payment of these fees. That is, Siluk requests that a single 20-percent payment be deducted, rather than *two 20-percent payments* (one toward his district court fee and one toward his appellate fee).

The question presented by Siluk's request for consolidation of fees, as interpreted by the motions panel and as briefed by counsel is whether § 1915(b)(2) allows only a maximum of 20 percent to be taken from his monthly income regardless of the number of cases or appeals filed, or whether the PLRA requires 20 percent taken each month for each case or appeal that he undertakes.

These two conflicting interpretations of § 1915(b)(2) are referred to in the briefs and in the cases as "sequential" and "simultaneous" recoupment.

Sequential recoupment refers to the method of payment whereby a single 20-percent payment is withdrawn on a monthly basis. For example, if an inmate had $10 in his or her account on the first of the month, the most that he or she could be required to pay toward his or her filings fees would be $2 (20 percent of the $10). That one payment is withdrawn monthly, and the cases and/or appeals that an inmate has filed will be paid off *sequentially*. Under such a rule, an inmate's account could not be emptied in a single month based solely on the clerk's withdrawal of a filing fee.

As applied to this case, sequential recoupment dictates that Siluk's account would be subject to a single 20-percent charge each month, and these charges would be used to pay

9

off: (1) first his district court fee; and (2) then, only after his first fee was paid, his fee to this court for his appeal.

Simultaneous recoupment on the other hand, refers to a protocol whereby 20 percent of the inmate's account is withdrawn for each case or appeal. Under such a rule, fees are paid off simultaneously, and an inmate's account could be emptied in a single month by the clerk of the court. For example, unlike for the sequential rule, under this reading of the statute if an inmate had $10 and owed money in five cases the clerk would deduct $2 for each case thus emptying the inmate's account.

As applied to this case, simultaneous recoupment dictates that the clerk of this Court and the clerk of the District Court would each withdraw 20 percent of Siluk's account simultaneously.

Given the PLRA's text, structure, and purpose, we conclude that Congress intended the monthly payments mandated under the PLRA to be debited from an inmate's account sequentially. Sequential recoupment provides prisoners with a reasonable economic disincentive to file frivolous claims, without being punitive or imposing such significant burdens that a prisoner might forgo asserting legitimate claims.

## A.  Text and Structure of § 1915

As noted earlier, §1915(b) establishes a gradual two-step garnishment procedure to ensure payment of filing fees. Subsection (b)(1) lays out the procedure for calculating and remitting the initial partial payment. It provides:

> if a prisoner brings a civil action or files an appeal [IFP], the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee[.]"[21]

---

[21]  28 U.S.C. § 1915(b)(1).

10

This subsection unambiguously applies to each action or appeal that a prisoner files, whether or not the prisoner has filed other suits that are pending. The controversy here stems from the ambiguity that arises when subsection (b)(1) is read in conjunction with the explanation of how the remainder of the filing fee must be paid, which is set forth in subsection (b)(2). Subsection (b)(2) states: "[a]fter payment of the initial partial filing fee," prisoners must "make monthly payments of 20 percent of the preceding month's income . . . until the filing fees are paid."[22]

The Supreme Court has explained that the words of a statute "must be read in their context with a view to their place in the overall statutory scheme."[23] Accordingly, a "provision that may seem ambiguous in isolation[]" can be "clarified by the remainder of the [statute]."[24] The text of § 1915 must therefore be read as a whole, so that the content and operation of one provision can illuminate the proper construction of another.[25] It is also crucial that we not lose sight of the Supreme Court's admonition that a statute permitting an individual to file IFP not be interpreted in a manner that would deprive litigants of the "last dollar they have."[26] In *Adkins v. E.I. DuPont de Nemours & Co.*, the

---

[22] *Id.* § 1915(b)(2).

[23] *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011).
[24] *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1754 (2011) (internal quotation marks omitted); *see also Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering [its] purpose and context[.]").

[25] *See, e.g.*, *Hagan v. Rogers*, 570 F.3d 146, 155 (3d Cir. 2009) ("Section 1915(b)(3) must be read in the context of § 1915(b) as a whole.").

[26] *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

11

Court explained that "[w]e cannot agree . . . that one must be absolutely destitute to enjoy the benefit of the [IFP] statute."[27]

Here, the government argues that construing the text and structure of § 1915 as requiring something other than simultaneous recoupment creates a disjunction.[28] According

---

[27] *Id.*

[28] The government asks us to adopt the view of the majority of our sister circuits, including the Courts of Appeals for the Fifth, Seventh, Eighth, Tenth, and D.C. Circuits, which have interpreted § 1915(b)(2) to require prisoners pay 20 percent of their funds towards filing fees concurrently, per case *and* per appeal. *See Pinson v. Samuels*, 761 F.3d 1, 7 (D.C. Cir. 2014) (holding that the PLRA requires a separate installment payment for each case in which a filing fee is owed); *Christensen v. Big Horn County Bd. of County Comm'rs*, 374 F. App'x 821, 829-33 (10th Cir. 2010) (unpublished) (embracing a "consistent reading of the similar provisions in §§ 1915(b)(1) and (b)(2)"); *Atchison v. Collins*, 288 F.3d 177, 180-81 (5th Cir. 2002) (reasoning that the word "court" appearing in both § 1915(b)(1) and (b)(2) should be read to refer to the "instant action," separate from previously filed lawsuits); *Lefkowitz v. Citi-Equity Group, Inc.*, 146 F.3d 609, 612 (8th Cir. 1998) ("Because the PLRA fee provisions were designed to require prisoners to bear financial responsibility for each action they take, the [20]-percent rule should be applied per case."); *Newlin v. Helman*, 123 F.3d 429, 436-37 (7th Cir. 1997), *overruled on other grounds by Lee v. Clinton*, 209 F.3d 1025, 1027 (7th Cir. 2000) *and Walker v. O'Brien*, 216 F.3d 66, 628-29 (7th Cir. 2000) ("[W]e hold that the fees for filing the complaint and appeal cumulate. . . . The PLRA is designed to require the prisoner to bear some marginal cost for each legal activity.").

District courts in the Sixth and Ninth Circuits have also followed the "per case," or "simultaneous recoupment" interpretation of § 1915. *See Hendon v. Ramsey*, 478 F. Supp. 2d 1214, 1219 (S.D. Cal. 2007) (adopting the Fifth Circuit's reasoning in *Atchison v. Collins*, 288 F.3d 177, 180-81 (5th Cir. 2002)); *Samonte v. Frank*, 517 F. Supp. 2d 1238, 1243 (D. Haw. 2007) (concluding that the "per case"

to the government, because subsection (b)(1), which pertains to the initial filing fee on a per-case basis regardless of the number of outstanding fees, sequential recoupment would result in an interpretative disconnect: an inmate could postpone paying subsequent fees under subsection (b)(2), but not the fees required (for each case) under subsection (b)(1).[29] The government concludes that because subsection (b)(1) requires that an inmate pay filing fees on a per-case basis, Congress intended subsection (b)(2) to operate in the same manner.

However, the two subsections address different situations and neither the statutory text nor the relationship between the two subsections suggests that we read the statute with such rigidity. Subsection (b)(1) deals with a one-time initial partial filing fee withdrawn "when [and only when] funds exist."[30] The amount of that fee is based on income *or* account balance during the prior six months.[31] In contrast, subsection (b)(2) deals with ongoing monthly payments that are withdrawn only when the prisoner's account balance "exceeds $10."[32] The amount debited pursuant to subsection

---

interpretation of § 1915 was the more practical approach); *Lyon v. Kentucky State Penitentiary*, No. 02-P53-R, 2005 WL 2044955, at *1 (W.D. Ky. Aug. 23, 2005) (finding that the Sixth Circuit implicitly adopted the "per case" interpretation in *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997)).

[29] *See, e.g.*, *Atchison*, 288 F.3d at 180-81 (holding that, in order to read § 1915 consistently, (b)(2) should correspond with (b)(1), in which the initial partial filing fee is imposed in each case); *Newlin*, 123 F.3d at 436 (holding that, because the "PLRA is designed to require the prisoner to bear some marginal cost for each legal activity," subsection (b)(2)'s requires recoupment on a per-encumbrance basis: "A prisoner who files one suit remits 20 percent of income to his prison trust account; a suit and an appeal then must commit 40 percent, and so on.").

[30] 28 U.S.C. § 1915(b)(1).

[31] *Id.*

[32] *Id.* § 1915(b)(2).

(b)(2) is based on the prior month's income.[33]  In addition, as the Court of Appeals for the Fourth Circuit explained in *Torres v. O'Quinn*, subsection (b)(1) specifically references "payment of *any* court fees[,]" [34] implying that "the [20-]percent exaction applies to *all* court fees, in total."[35]

Nothing in subsection (b)(2)'s language, requiring monthly payments to "the clerk of the court, . . . until the filing fees . . . are paid[,]"[36] suggests that Congress intended that "the clerk" simultaneously refer to two different clerks in two different courts.  Congress could certainly have required monthly payments to multiple clerks of different courts, or the same clerk for multiple filings until *each* filing fee is paid.  Congress did not use language that would have achieved that result.  Rather, the statute refers to "fees" relating to *an* "action *or* appeal."[37]  The logical conclusion is that Congress recognized that multiple "fees" might be owed, but required sequential payments for only one case at a time.

Nevertheless, the government argues that, because "[t]he rest of Section 1915 addresses each case individually," subsection (b)(2) should also be construed to require a monthly payment for each case a prisoner has filed.[38]  That view is inconsistent with other provisions of the statute, which do not have the same ambiguity as that which arises from the interplay between subsections (b)(1) and (b)(2).  For example subsection (g), known as the PLRA's "three strikes" rule, does not address each case individually.  Subsection (g) prohibits an inmate from bringing a case if s/he has, on three

---

[33] *Id.*

[34] *Torres v. O'Quinn*, 612 F.3d 237, 245 (4th Cir. 2010) (emphasis added).

[35] *Id.* (emphasis in original).

[36] 28 U.S.C. § 1915(b)(2).
[37] *Id.* § 1915(a)(2) (emphasis added).

[38] Gov. Br. at 13 n.6.

or more prior occasions, brought an action or appeal in federal court "that was dismissed on the grounds that it [was] frivolous, malicious, or fails to state a claim upon which relief may be granted."[39]  Clearly, Congress there intended to review a prisoner's *overall* litigation history, not merely one case at a time.[40]

Furthermore, the Supreme Court has explained that the various subsections of § 1915 reflect the PLRA's multi-pronged approach to reducing frivolous prisoner litigation in federal courts.[41]  However, subsections (b)(1) and (b)(2) impact the congressional purpose in different, but complimentary, ways.  Subsection (b)(1) establishes a mechanism to ensure that all prisoners pay an initial partial filing fee whenever a filing fee would be required for a claimant who was not filing IFP.[42]  This up-front cost forces prisoners to make reasoned choices about whether to file a law suit.  Subsection (b)(2), then, establishes the garnishment procedure of subsequent monthly payments to completely pay the balance of all filing fees after the initial partial payment.[43]  It addresses the *method* by which further fees can be collected, while subsection (b)(1) insures that payment of the "full amount" of the fees "shall be required[.]"[44]  Thus, we do

---

[39] 28 U.S.C. § 1915(g).

[40] Other portions of § 1915 that do not apply on a per-case basis include subsection (d), which is a blanket rule that pertains to all cases brought under § 1915, and subsection (e)(1), which provides that "[t]he court may request an attorney to represent any person unable to afford counsel." *Id.* §§ 1915(d), (e)(1).

[41] *Skinner v. Switzer*, 131 S. Ct. 1289, 1299 (2011) (noting that the PLRA "placed a series of controls on prisoner suits, constraints designed to prevent sportive filings in federal court.").

[42] 28 U.S.C. § 1915(b)(1).

[43] *Id.* § 1915(b)(2).

[44] *Id.* § 1915(b)(1).

not believe there is anything inconsistent about reading these two subsections to establish a scheme of sequential recoupment of fees.

We therefore agree with the conclusion of the Court of Appeals for the Second Circuit that the reference to an initial partial payment of "any court fees . . . impl[ies] that multiple fees and costs should each be subject to a uniform ceiling [of 20 percent]."[45]

## B. Purpose of the PLRA

When congressional intent is clear from the text of a statute, we do not delve into legislative history or focus on the statutory scheme.[46] However, in light of the discord among courts of appeals, and the apparent tension between subsections (b)(1) and (b)(2), it is appropriate to consider the purpose of the statutory scheme to ensure that our interpretation is consistent with Congress's objectives in enacting these provisions.[47] As the Supreme Court has explained, the meaning of "certain words or phrases may only become evident when placed in context . . . and with a view to their place in the overall statutory scheme."[48]

The Supreme Court has noted that the overarching purpose of the PLRA is to implement "a series of controls"

---

[45] *Whitfield v. Scully*, 241 F.3d 264, 276 (2d Cir. 2001).

[46] *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010), *as amended* (May 7, 2010) ("'When the words of a statute are unambiguous, then this first canon is also the last: judicial inquiry is complete.'" (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992))).

[47] *See Dolan v. United States Postal Serv.*, 546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering [its] purpose and context[.]").

[48] *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007) (internal quotation marks and citations omitted).

designed to prevent meritless filings in federal court.[49]  In enacting the PLRA, "Congress sought to put in place economic incentives that would prompt prisoners to 'stop and think' before filing a complaint."[50]

Congress did not enact the PLRA to punish inmates for filing suits, nor did it intend to deter prisoners from filing valid claims.[51]  In fact, § 1915(b)(4) specifically provides that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."[52]  Congress was, therefore, keenly aware of the need to safeguard a prisoner's constitutional right of access to the courts.[53]

---

[49] *Skinner v. Switzer*, 131 S. Ct. 1289, 1299 (2011); *see also Abdul-Akbar v. McKelvie*, 239 F.3d 307, 318 & n.3 (3d Cir. 2001) (internal quotation marks omitted), *cert. denied*, 533 U.S. 953 (2001).

[50] *Id.* (citing 141 Cong. Rec. S7,498-01, S7,526 (daily ed. May 25, 1995) (Sen. Kyl)).

[51] *See* 141 Cong. Rec. S7,526 (daily ed. May 25, 1995) (Sen. Kyl) ("The filing fee is small enough not to deter a prisoner with a meritorious claim . . . ."); 141 Cong. Rec. S14,627 (daily ed. Sept. 29, 1995) (Sen. Hatch) ("I do not want to prevent inmates from raising legitimate claims."); *see also Bounds v. Smith*, 430 U.S. 817, 822 (1977) ("More recent decisions have struck down restrictions [to prisoners' constitutional right of access to the courts] and required remedial measures to insure that inmate access to the courts is adequate, effective, and meaningful."); *see generally Ex parte Hull*, 312 U.S. 546, 549 (1941) ("[T]he state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus.").

[52] 28 U.S.C. § 1915(b)(4).

[53] The Supreme Court has held that prisoners have a constitutional right to bring court challenges to vindicate "'basic constitutional rights.'"  *Allah v Seiverling*, 229 F.3d

In order to balance the competing objectives of preserving a prisoner's constitutional right of access to the courts while deterring frivolous litigation, § 1915(b) requires that an IFP prisoner make an initial payment towards the filing fee, but permits the prisoner to pay the balance of his or her fees over an extended period of time. Pursuant to this scheme, the initial partial filing fee can be withdrawn only "when funds exist" in the prisoner's account.[54] Thereafter, monthly payments, pegged at 20 percent of the prisoner's account balance, are withdrawn *only* when the account balance "exceeds $10."[55]

Concurrent recoupment is inconsistent with the purpose of the PLRA because, although Congress intended to deter frivolous litigation by requiring IFP prisoners to bear some marginal cost, Congress did not intend to create a payment scheme that would ensure fees be paid as expeditiously as possible or that would create tension with an inmate's constitutional right of access to the courts.[56]

Citing *Newlin v. Helman*, the government argues that sequential recoupment would undermine Congress's intent to deter frivolous prisoner litigation by allowing a prisoner to "postpone" indefinitely his or her monthly payments for any additional lawsuit until after all previous filing fees had been paid.[57] We realize, of course, that sequential recoupment is

220, 223 (3d Cir. 2000) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

[54] 28 U.S.C. § 1915(b)(1).

[55] *Id.* § 1915(b)(2).

[56] As we noted at the outset, and as Siluk's allegations suggest, although the amounts appear "marginal," they can be quite substantial to an inmate subsisting on nominal prison wages.

[57] *See Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir. 1997), *overruled on other grounds by Lee v. Clinton*, 209 F.3d 1025, 1027 (7th Cir. 2000) *and Walker v. O'Brien*, 216 F.3d 66, 628-29 (7th Cir. 2000); *see also Christensen v. Big Horn County Bd. of County Comm'rs*, 374 F. App'x 821, 830 (10th

less of a deterrent to frivolous claims, but that consideration does not alter our analysis. Although Congress was concerned that prisoners *would* pay their filing fee, Congress was clearly not as concerned about *when* the payment occurred. As Senator Dole explained during the debates on the PLRA, "when prisoners know that they will have to pay these costs -- perhaps not at the time of filing, but eventually -- they will be less inclined to file a lawsuit in the first place."[58] That is precisely the point.

Congress could have required payments of more than 20 percent of the previous month's income or imposed a time limit for payment of all outstanding fees if § 1915 was intended to collect filing fees as quickly as practicable. However, that is not what Congress did. Although Congress wanted to encourage indigent prisoners to think before bringing claims, it did not want to subject inmates to unacceptable hardships in order to pursue judicial redress.[59]

---

Cir. 2010) (unpublished) (observing that the PLRA's "pay-as-you-go constraint[] would be diluted if not defeated by permitting prisoners with one ongoing case to postpone all successive filing fee obligations"); *Lefkowitz v. Citi-Equity Group, Inc.,* 146 F.3d 609, 612 (8th Cir. 1998) (rejecting "per inmate" approach to the "PLRA['s] fee provisions" as inconsistent with Congress's intent).

[58] *See* 141 Cong. Rec. S14,413-14 (daily ed. Sept. 27, 1995) (statement of Sen. Dole).

[59] *See also Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339-40 (1948) (noting that an undesirable result would be a "statutory interpretation [that] . . . force[s] a litigant to abandon what may be a meritorious claim in order to spare himself complete destitution."). This Court has also repeatedly held that "prisoners are not required to surrender those small amenities of life which they are permitted to acquire in a prison in order to litigate [IFP.]" *Jones v. Zimmerman*, 752 F.2d 76, 79 (3d Cir. 1985) (internal quotation marks and citation omitted); *see also Bullock v. Suomela*, 710 F.2d 102, 103 (3d Cir. 1983); *Souder v. McGuire*, 516 F.2d 820, 823 (3d Cir. 1975).

Moreover, concerns that sequential repayment will not sufficiently deter meritless claims are alleviated by subsection (g)'s "three strikes" rule.[60] That is a "*powerful* economic incentive" aimed specifically at repeat filers to prevent them from filing more "frivolous lawsuits or appeals."[61] Subsection (g) seeks to *penalize* prisoners who have filed multiple, meritless claims, and revokes the IFP "privilege" from those who have had "three strikes," "no matter how meritorious subsequent claims may be."[62] Subsection (b), on the other hand, is a moderate measure only intended to address prisoners filing lawsuits without considering the merit of their claims.[63]

Accordingly, there is a clear difference between the purpose of § 1915(g) and the rest of the PLRA. As the government agrees, § 1915(g) is structured to deter frivolous suits while protecting a prisoners' right of access to the courts.[64] Accordingly, we need not interpret § 1915(b)(2) as

---

[60] As discussed above, § 1915(g) states "if [a] prisoner has, on 3 or more prior occasions," brought an action or appeal in federal court "that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted[,]" then "[i]n no event shall [the] prisoner" bring an action or appeal IFP. 28 U.S.C. § 1915(g). Subsection (g) contains an exception permitting a prisoner with three strikes to file an IFP action if s/he is "under imminent danger of serious physical injury." *Id.*

[61] *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 314 (3d Cir. 2001), *cert. denied*, 533 U.S. 953 (2001) (emphasis added).

[62] *Id.*

[63] Although, as the Fourth Circuit noted in *Torres*, the statutory requirement, that all filing fees be paid, deters frivolous litigation on its own, without further requiring simultaneous recoupment. *Torres v. O'Quinn*, 612 F.3d 237, 247 (4th Cir. 2010).
[64] *See* Gov. Br. at 22.

requiring simultaneous fee collection in order to advance the congressional concern with frivolous lawsuits.[65]

Nevertheless, we recognize that the contrary view, as expressed by the Court of Appeals for the Seventh Circuit in *Newlin*, has gained some support. In *Newlin*, the Court reasoned that, because the PLRA is designed to "require the prisoner to bear some marginal cost for each legal activity," simultaneous recoupment is most consistent with the statute's purpose because it exacts that price the soonest.[66] The *Newlin* Court was concerned that, "[u]nless payment begins soon after the event that creates the liability, this will not happen[]" and prisoners could file "multiple suits for the price of one."[67] However, that analysis conflates the distinct objectives of ensuring payment of all filing fees and expediting payment of fees. Neither the text of the statute nor the legislative history supports this view. In fact, that interpretation is in direct conflict with the text of § 1915(b) because the PLRA's filing

---

[65] In addition to the "three strikes" rule of subsection (g), 28 U.S.C. § 1915(a)(3) permits IFP privileges to be automatically revoked on appeal if the trial court certifies that the appeal is meritless. Additionally, in cases brought by a plaintiff proceeding IFP, the court is directed to "dismiss the case at any time if [it] determines that . . . the action or appeal . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also id.* § 1915A(a)-(b) (containing a similar requirement for all prisoner cases which "seek[] redress from a governmental entity"). If the court dismisses an action or appeal on one of these grounds, the prisoner nonetheless remains liable for paying the filing fee in full. *See, e.g.,* J.A. 49 ("[T]he prisoner is obligated to pay the entire filing and/or docketing fee . . . regardless of the outcome of the proceeding or appeal."); *see also Porter v. Dep't of Treasury*, 564 F.3d 176, 179-80 (3d Cir. 2009).

[66] *See Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir. 1997), *overruled on other grounds by Lee v. Clinton*, 209 F.3d 1025, 1027 (7th Cir. 2000) *and Walker v. O'Brien*, 216 F.3d 66, 628-29 (7th Cir. 2000).

[67] *Id.* at 436-37.

fee provisions explicitly permit a prisoner to postpone the payments indefinitely if the inmate's account balance never exceeds $10.00.[68] Moreover, sequential payment does not mean that an inmate can file "multiple suits for the price of one." The prisoner still has to pay all fees incurred, the amount of each individual payment is simply capped at 20 percent of the prior month's balance, and the payments are stretched over a greater period of time.[69]

The *Newlin* Court's concern that, under a sequential collection scheme, a prisoner filing multiple suits could "postpon[e] payment of the fees for later-filed suits until after the end of imprisonment (and likely avoid them altogether)[]"[70] is also misplaced. Although appellate courts do not agree on the interpretation of the payment mechanism in § 1915(b)(2), there is consensus among appellate courts that an inmate's obligation to fully pay all fees incurred is not coterminous with the inmate's incarceration.[71]

---

[68] 28 U.S.C. § 1915(b)(2).

[69] Under either a simultaneous or sequential recoupment approach, § 1915 requires the prisoner to repay the entire filing fee, eventually. *See id.* §§ 1915(b)(2), (3) (filing fee payments continue "until the filing fees are paid"); *see also Torres v. O'Quinn*, 612 F.3d 237, 243 (4th Cir. 2010) (concluding that, under a sequential collection scheme, a prison could "collect the funds to pay the fees accrued by a specific inmate, and then distribute those funds to the appropriate court until that court's fees are paid in full. After satisfying the first court, the prison would continue to collect funds and use them to pay the next court in sequence.").

[70] *Newlin,* 123 F.3d at 436.

[71] All appellate courts to have reached this issue have held that the obligation is not coterminous. *See Robbins v. Switzer*, 104 F.3d 895, 899 (7th Cir. 1997) (noting that, under the PLRA, "release does not eliminate an obligation that could and should have been met from the trust account while imprisonment continued."); *In re Smith*, 114 F.3d 1247, 1251 (D.C. Cir. 1997) (recognizing that "if a litigant is a prisoner on the day he files a civil action, the PLRA applies."); *Gay v. Tex. Dep't of Corr*., 117 F.3d 240, 242 (5th Cir. 1997)

As we have noted, the majority of view (of simultaneous recoupment) could result in 100 percent of a prisoner's income being garnished to pay filing fees.[72] We cannot imagine a valid penological or rehabilitative purpose in creating a risk that inmates would have to surrender the necessities of daily subsistence. We find nothing in the legislative history of § 1915 that would allow us to impute such a draconian intent to Congress.[73] Rather, we agree with the observation of the Court of Appeals for the Fourth Circuit that "[t]he garnishment of more than twenty percent of an indigent inmate's already meager income crosses the line from deterrence to punishment and was not the intent behind § 1915."[74]

---

(holding that § 1915's filing-fee requirement applied to an inmate even though he was released, because he "file[d] an appeal" while he was a prisoner); *McGann v. Comm'r, Soc. Sec. Admin.*, 96 F.3d 28, 30 (2d Cir. 1996) (construing the PLRA to "require[] partial fee payments . . . only while the prisoner remains in prison, and that, upon his release, his obligation to pay fees is to be determined, like any non-prisoner, solely by whether he qualifies for i.f.p. status.").

[72] *Pinson v. Samuels*, 761 F.3d 1, 8 (D.C. Cir. 2014) (acknowledging that simultaneous recoupment could subject "100% of a prisoner's income" to recoupment); *Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir. 1997), *overruled on other grounds by Lee v. Clinton*, 209 F.3d 1025, 1027 (7th Cir. 2000) *and Walker v. O'Brien*, 216 F.3d 66, 628-29 (7th Cir. 2000) (observing that, under a simultaneous recoupment plan, "[f]ive suits or appeals mean that the prisoner's entire monthly income must be turned over to the court until the fees have been paid.").

[73] *See also Torres v. O'Quinn*, 612 F.3d 237, 247 (4th Cir. 2010) ("Congress put a limit on garnishment from an inmate's (already meager) income, understanding that a 'chilling effect' on litigation was not the same as a complete bar on filing suits, which may occur if close to one hundred percent of an inmate's income is taken to pay his filing fees.").

[74] *Id.*

We therefore conclude that sequential recoupment harmonizes subsection (b)(2) with the purpose of the statute, while avoiding the constitutionally suspect result of erecting barriers to courts that would make some inmates choose between attempting to seek redress for legitimate claims and having enough money in one's prison account to purchase items required for basic hygiene.[75]

## C. Constitutional Concerns

Our conclusion is consistent with the doctrine of constitutional avoidance. If a statute can be construed two ways, "by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided," our duty is to "adopt the latter."[76]

Siluk argues that simultaneous recoupment, by permitting the garnishment of anywhere from 40 to 100 percent of a prisoner's income, risks violating prisoners' Eighth Amendment rights by rendering a prisoner unable to buy necessary hygiene supplies.[77] The government argues

---

[75] *See also id.* at 246-47 (explaining that the sequential interpretation of § 1915(b) "both satisfies Congress's intent when passing the PLRA and protects the constitutional rights of inmates."); *Whitfield v. Scully*, 241 F.3d 264, 276 (2d Cir. 2001) (reasoning that § 1915 provides a "uniform ceiling [of 20 percent] in a compromise between the imperative to collect fees . . . and the right of prisoners to effective access to the courts[,]" even where plaintiff owes fees in multiple cases).

[76] *United States v. Edmonds*, 80 F.3d 810, 819 (3d Cir. 1996) (internal quotation marks and citation omitted).

[77] *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (holding that under the Eighth Amendment, prisoners have a right to the "minimal civilized measure of life's necessities."); *Garcia v. Kimmell*, 381 F. App'x 211, 216 (3d Cir. 2010) (per curiam) (unpublished) (holding that "those minimal necessities include provision for basic hygiene.") (citing *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996); *Young v. Quinlan*, 960 F.2d 351, 363 (3d Cir. 1992),

that this concern is misplaced, because prison systems are constitutionally bound to provide inmates with the necessities of life, including "'adequate food, clothing, shelter, and medical care,'"[78] "as well as with 'paper and pen to draft legal documents[.]'"[79] The government asserts that the *Adkins* Court's fear of "forc[ing] a litigant to abandon what may be a meritorious claim in order to spare himself complete destitution,"[80] is therefore inapplicable in the prison context. Thus, the government concludes, adopting the simultaneous-payment interpretation to § 1915(b)(2) simply will not force a prisoner to choose between paying for a lawsuit and satisfying his or her most basic needs.

However, the government's argument is undermined by the allegations here.[81] Siluk claims he is "required to pay for . . . soap, shampoo, razors, [and] deodorant."[82] Moreover, while prisons provide basic hygienic supplies to those who cannot afford them, courts have often had to resolve claims of prisoners who claim that what is provided is so meager as to

---

*superseded by statute*, Title VIII of Pub. L. No. 104-134, 100 Stat. 1321 (1996)).

[78] Gov. Br. at 23-24 (quoting *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010)).

[79] *Id.* at 24 (quoting *Bounds v. Smith*, 430 U.S. 817, 824-25 (1977)).

[80] *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 340 (1948).

[81] This case is before us following Siluk's appeal of the District Court's Federal Rule of Civil Procedure 12(b)(6) dismissal, Siluk's application to proceed IFP before us, and Siluk's motion to combine payment of his filing fees. In reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6), "we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002).

[82] Appx. at 47 (Pet. to Combine Filing Fees at ¶ 4).

deny basic amenities.[83]  Additionally, Siluk states that he is required to pay for certain costs incurred in bringing this action, such as paper, pens, copies, carbon paper, and mail. He argues that he should "have enough funds available to continue with this action[.]"[84]  We agree, and find that his assertion raises constitutional concerns regarding his access to the courts.[85]

In *Abdul-Akbar*, we upheld the PLRA's "three strikes" provision, which requires some prisoners to pay their entire filing fees *before* their complaints are adjudicated.[86]  There, we concluded that "requiring a prisoner to pay filing fees in a civil case does not, without more, violate that prisoner's right of meaningful access to the courts."[87]  However, imposing the scheme of concurrent debits advocated by the government certainly could result.  For example, simultaneous recoupment of filing fees from previous suits could impede a prisoner seeking redress for abuses that may not necessarily result in serious bodily injury or death.[88]  We will not

___

[83] *See, e.g.*, *Young v. Quinlan*, 960 F.2d 351, 363 (3d Cir. 1992); *see also Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996).

[84] Appx. at 52-53 (Prison Account Statement, reflecting postage charges).

[85] As noted above, the Second and Fourth Circuits have declined to require prisoners who file multiple lawsuits to pay more than 20 percent of their monthly income toward filing fees because of this exact concern.  *Torres v. O'Quinn*, 612 F.3d 237, 242, 247-48 (4th Cir. 2010); *Whitfield v. Scully*, 241 F.3d 264, 276-77 (2d Cir. 2001).

[86] *Abdul-Akbar v. McKelvie*, 239 F.3d 307 (3d Cir. 2001) (internal quotation marks omitted), *cert. denied*, 533 U.S. 953 (2001).

[87] *Id.* at 317.

[88] *See* 28 U.S.C. § 1915(g) (establishing an exception to the "three strikes" rule for a prisoner who "is under imminent danger of serious physical injury."); *see also Torres*, 612 F.3d

construe the PLRA in a way that would prevent prisoners from vindicating their fundamental rights in a judicial forum.[89]

We realize, of course, that several of our sister circuit courts have rejected the contention that simultaneous recoupment is unconstitutional because there is no constitutional right to proceed IFP.[90] Although there may not be a constitutional right to proceed IFP, it cannot be doubted that we should avoid interpreting § 1915(b) in a manner that would erect obstacles to an inmate's ability to seek redress in court for legitimate grievances unless the text of the statute requires such an interpretation.

The Supreme Court has clearly stated that we have a duty to "avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative

---

at 248 (recognizing that a "per case" interpretation of § 1915(b) could force prisoners to choose "between saving their meager income and searching for a remedy for abuses in prison" that do not rise to the level of serious physical injury).

[89] *Mayer v. Chicago*, 480 U.S. 189, 198 (1971); *see also Whitfield*, 241 F.3d at 277 (explaining that courts should "avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question." (quoting *Gomez v. United States*, 490 U.S. 858, 864 (1989))).
[90] *Atchison v. Collins*, 288 F.3d 177, 179-81 (5th Cir. 2002) (finding that no "serious constitutional questions [are] raised" by the simultaneous collection of fees in each case under § 1915(b) because "indigent persons have no constitutional right to proceed [IFP]" and "states are constitutionally bound to provide [prisoners] with the necessities of life."; *Lefkowitz v. Citi-Equity Group, Inc.*, 146 F.3d 609, 612 (8th Cir. 1998) (finding that, "[b]ecause the PLRA fee provisions were designed to require prisoners to bear financial responsibility for each action they take, the [20]-percent rule should be applied simultaneously per case.").

interpretation poses no constitutional question."[91]  Here, there is such a reasonable alternative that is supported by the text and purpose of the PLRA: sequential recoupment.

**CONCLUSION**

For the foregoing reasons, we conclude that  § 1915 permits the recoupment of only 20 percent of a prisoner's monthly income for filing fees, regardless of how many civil actions or appeals the prisoner elects to pursue, thereby adopting the sequential recoupment rule advocated by the petitioner.

---

[91] *Gomez*, 490 U.S. at 864.

<u>Siluk v. Merwin</u>
No. 11-3996

CHAGARES, <u>Circuit Judge</u>, dissenting.

The majority holds that under 28 U.S.C. § 1915(b), a prisoner who owes multiple filing fees is required to pay them sequentially, not simultaneously, such that a prisoner pays no more than 20% of the preceding month's income each month, no matter how many separate filing fees he owes. I respectfully disagree, and would join the majority of our sister Courts of Appeals that have addressed the issue in holding that § 1915(b) requires a prisoner who has incurred multiple filing fees to pay them simultaneously. An interpretation requiring that fees be paid simultaneously is the most natural reading of the statute and is more consistent with the purpose of the Prison Litigation Reform Act ("PLRA") than is a sequential approach. Therefore, I respectfully dissent.[1]

I.

A.

In <u>Abdul-Akbar v. McKelvie</u>, we discussed the history and development of the PLRA. <u>See</u> 239 F.3d 307, 311-12 (3d Cir. 2001) (en banc). We observed that "[t]he discretionary power to permit indigent plaintiffs to proceed without first paying a filing fee was initially codified in the federal statutes in 1892." <u>Id.</u> at 311. Congress enacted the PLRA in 1996, "largely in response to concerns about the heavy volume of frivolous prisoner litigation in the federal courts." <u>Id.</u> at 312. Because prisoners easily achieved <u>in forma pauperis</u> ("IFP") status, Congress concluded that they were not "subject to the same economic disincentives to filing meritless cases that face other civil litigants," and, accordingly, the PLRA instituted a number of reforms designed to "prompt prisoners to 'stop and think' before filing a complaint." <u>Id.</u> at 318.

_____

[1] I do join my learned colleagues, however, in thanking the attorneys who handled this matter <u>pro bono</u> and in commending them for their excellent representation.

1

Among other reforms, the PLRA amended the IFP statute as it applies to prisoners.  Under the PLRA, prisoners who qualify for IFP status are no longer excused from paying filing fees altogether, but rather are required to pay them in accordance with 28 U.S.C. § 1915(b), which provides:

> (1) [I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.  The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of —
>
> (A) the average monthly deposits to the prisoner's account; or
>
> (B) the average monthly balance in the prisoner's account for the 6-      month period immediately preceding the filing of the complaint or  notice of appeal.
>
> (2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

This provision, while clearly (1) requiring prisoners to pay filing fees in full, and (2) permitting prisoners who qualify for IFP status to pay filing fees over time rather than up front, does not explicitly address what happens when a prisoner owes more than one filing fee at once.  The majority interprets the statute as requiring sequential payment of multiple filing fees, with a hard payment cap of 20% of a prisoner's monthly income no matter how many filing fees he owes.   I disagree, and believe that the statute requires simultaneous payment of multiple filing fees.  A majority of Courts of Appeals having considered this issue support this view.  See Pinson v. Samuels, 761 F.3d 1, 7-10 (D.C. Cir. 2014) (holding that § 1915(b) requires a prisoner who has incurred multiple filing fees to pay them simultaneously),

2

petition for cert. filed sub nom. Bruce v. Samuels, 83 U.S.L.W. 3640 (U.S. Jan. 16, 2015) (No. 14-844); Christensen v. Big Horn Cnty. Bd. of Cnty. Comm'rs, 374 F. App'x 821, 829-33 (10th Cir. 2010) (unpublished) (same); Atchison v. Collins, 288 F.3d 177, 180-81 (5th Cir. 2002) (per curiam) (same); Lefkowitz v. Citi-Equity Grp., Inc., 146 F.3d 609, 612 (8th Cir. 1998) (same); Newlin v. Helman, 123 F.3d 429, 435-36 (7th Cir. 1997) (same), overruled on other grounds, Lee v. Clinton, 209 F.3d 1025, 1027 (7th Cir. 2000). But see Torres v. O'Quinn, 612 F.3d 237, 242-53 (4th Cir. 2010); Whitfield v. Scully, 241 F.3d 264, 275-77 (2d Cir. 2001).

## B.

The Supreme Court has recently instructed that "reasonable statutory interpretation must account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" Util. Air Regulatory Grp. v. EPA, 134 S. Ct. 2427, 2442 (2014) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997) (alteration in original)). The Court continued that "[a] statutory provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.'" Id. (quoting United Sav. Ass'n of Tex. v. Timbers of Inwood Forrest Assocs., Ltd., 484 U.S. 365, 371 (1988) (alteration in original)). This is such a case, where the meaning of a provision, § 1915(b)(2), is clarified by the remainder of § 1915. See Christensen, 374 F. App'x at 829 ("The majority 'cumulative payment' or 'per case' position with which we agree has been adopted based on standard interpretive principles (construing § 1915(b)(2) in light of the other provisions in § 1915)."). In the past, we have similarly resorted to § 1915 or § 1915(b) "as a whole" to determine the meaning of a provision therein. See, e.g., Hagan v. Rogers, 570 F.3d 146, 155 (3d Cir. 2009) ("Section 1915(b)(3) must be read in the context of § 1915(b) as a whole."); Abdul-Akbar, 239 F.3d at 312, 314 (interpreting § 1915(g) in the context "of the PLRA as a whole"); Santana v. United States, 98 F.3d 752, 756, 757 (3d Cir. 1996) (concluding that "the filing fee payment requirements of the PLRA set forth in 28

3

U.S.C. § 1915(b) do not apply to habeas corpus petitions or to appeals from the denial of such petitions" after considering the PLRA "as a whole").

The text of § 1915(b)(2), which requires that "[a]fter payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account," does not explicitly answer the question of how multiple filing fees should be paid. However, reading § 1915(b)(2) in the context of § 1915(b) as a whole shows that the statute requires simultaneous recoupment of multiple filing fees. It is clear from the text of § 1915(b)(1) and undisputed by the parties that a prisoner is required to pay an initial filing fee for each case or appeal he files – a "per-case" approach – no matter how many other fees he has paid or is paying. See § 1915(b)(1) (requiring that "if a prisoner brings a civil action or files an appeal in forma pauperis . . . [t]he court shall assess and, when funds exist, collect . . . an initial partial filing fee. . . ."). Accordingly, "[t]he plain text of [§ 1915(b)(1)] calls for assessment of the initial partial filing fee <u>each time</u> a prisoner 'brings a civil action or files an appeal.'" <u>Pinson</u>, 761 F.3d at 8 (quoting 28 U.S.C. § 1915(b)(1)). I agree with the Government that it is logical to interpret § 1915(b)(2) to require that monthly payments of 20% be made for each case as well, and not for each prisoner, regardless of how many suits or appeals he or she files. See <u>Hendon v. Ramsey</u>, 478 F.Supp. 2d 1214, 1219 (S.D. Cal. 2007) ("Thus, an initial filing fee is collected each time a prisoner initiates an action, rather than once per prisoner irrespective of the number of actions the prisoner has filed."). By contrast, reading a sequential (or "per-prisoner") payment structure into § 1915(b)(2) would be inconsistent with the per-case approach of § 1915(b)(1).

The text of § 1915(b)(2) itself provides further support for a simultaneous recoupment approach, as the provision specifies that the prisoner must make monthly payments of 20 percent "[a]fter payment of the initial partial filing fee." 28 U.S.C. § 1915(b)(2). If, as is undisputed, a prisoner must pay the initial filing fee for each suit filed, then the prisoner must immediately follow through and pay the monthly installment payments on the amounts remaining for the same action or

4

appeal the prisoner has filed. Put another way, "[b]ecause the initial partial filing fee imposed in subsection (b)(1) acts as the 'triggering condition' for the monthly installments required by subsection (b)(2), the two provisions should be read in tandem." Pinson, 761 F.3d at 9 (quoting Torres v. O'Quinn, 612 F.3d 237, 256 (4th Cir. 2010) (Niemeyer, J., dissenting)). As a result, both § 1915(b)(1) and § 1915(b)(2) apply equally to each action or appeal filed, with no exception in either subsection for multiple filings. See id. ("Given that the initial fee required by subsection (b)(1) applies on a per-case basis, it follows that subsection (b)(2)'s monthly payment obligation likewise applies on a per-case basis.").

Other provisions of § 1915 similarly reflect a per-case approach. For example, § 1915(a)(2) provides that a "prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefore . . . shall submit . . . a trust fund account statement . . . for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal." 28 U.S.C. § 1915(a)(2) (emphasis added). In addition, § 1915(e)(2) provided that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time" if the court determines that the case is defective. 28 U.S.C. § 1915(e)(2) (emphasis added). Finally, § 1915(f)(1) provides that a court may issue a judgment for costs "at the conclusion of the suit or action." 28 U.S.C. § 1915(f)(1) (emphasis added). Again, these subsections exemplify the "per-case" approach common to all of § 1915.

For these reasons, I part ways with the majority, and would interpret § 1915(b)(2) to require that prisoners who owe multiple filing fees pay them simultaneously rather than sequentially.

C.

A rule requiring simultaneous recoupment is consistent with the PLRA's effort to require prisoners to incur a marginal cost for each additional lawsuit they file. By requiring prisoners to bear additional costs for each suit, the PLRA encourages prisoners to absorb a portion of the

5

economic impact of their lawsuit and aggregate their claims in a single suit. It also discourages frivolous lawsuits.

Some of our sister Courts of Appeals have recognized as much in interpreting § 1915(b) to require simultaneous recoupment. See, e.g., Pinson, 761 F.3d at 10 (observing that "the per-case approach comports with the PLRA's basic object" because "[c]apping monthly withdrawals at twenty percent of an inmate's income, regardless of the number of suits filed, would diminish the deterrent effect of the PLRA once a prisoner files his first action"); Lefkowitz, 146 F.3d at 612 ("Because the PLRA provisions were designed to require prisoners to bear financial responsibility for each action they take, the twenty-percent rule should be applied per case."); Newlin, 123 F.3d at 436 (holding that prisoners must make monthly payments for multiple filing fees simultaneously because "[o]therwise a prisoner could file multiple suits for the price of one, postponing payment of the fees for later-filed suits until after the end of imprisonment (and likely avoiding them altogether)," and "[t]he PLRA is designed to require the prisoner to bear some marginal cost for each legal activity"); see also Torres, 612 F.3d at 256 (Niemeyer, J., dissenting) (observing that the majority's holding, allowing for sequential payment of multiple filing fees, "gives prisoners, in effect, a free ride after they file their first piece of litigation").

The marginal cost to prisoners of filing additional lawsuits or appeals might not only be delayed, but also might be eliminated entirely, as some of our sister Courts of Appeals have held that "the PLRA fee requirements are not applicable to a released prisoner." DeBlasio v. Gilmore, 315 F.3d 396, 397 (4th Cir. 2003); accord McGann v. Comm'r, Soc. Sec. Admin., 96 F.3d 28, 30 (2d Cir. 1996). In DeBlasio, the Court of Appeals for the Fourth Circuit held that, upon a prisoner's release, his "obligation to pay filing fees is determined by evaluating whether he qualifies under the general in forma pauperis provision of 28 U.S.C. § 1915(a)(1)." 315 F.3d at 397. Section 1915(a)(1) excuses an indigent litigant from prepaying filing fees altogether, provided that the litigant files an affidavit including a statement of his assets and his inability to pay fees. See 28 U.S.C. § 1915(a)(1). Accordingly, if prisoners are released from their payment obligations under the PLRA once they get

6

out of prison, under a sequential payment approach they would be able to postpone payment of all but one of their owed filing fees indefinitely until they are no longer obligated to pay them at all.

Allowing prisoners to postpone or even escape their payment obligations is clearly contrary to the PLRA's purpose, as it provides virtually no deterrent to filing an infinite number of lawsuits. An interpretation requiring that fees be paid simultaneously is, therefore, more consistent with the purpose of the PLRA.

D.

Finally, I respectfully disagree with the majority that such a reading gives rise to constitutional concerns, either by treading on inmates' rights under the Eighth Amendment or by barring inmates' access to the courts.

We have observed that the Eighth Amendment requires prisons to provide "humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010) (quotation marks omitted). I agree with the Government that this obligation mitigates the concern we have expressed with respect to indigent non-prisoners, that they would have to choose between necessities like toothbrushes and a lawsuit. In the prison context, where prisons are obligated to provide such necessities, prisoners need not make this choice.[2] As a result, our sister Courts of Appeals have rejected the argument that a simultaneous approach could violate prisoners' Eighth Amendment rights. See, e.g., Pinson, 761 F.3d at 9-10; Atchison, 288 F.3d at 181.

Nor would simultaneous recoupment bar inmates' access to the courts. With regard to the concern the majority raises, that inmates require tools such as pens and paper to file suit, the Supreme Court has made clear that "[i]t is

---

[2] The Pennsylvania Department of Corrections memorialized this requirement in Policy Statement DC-ADM 815 (effective May 29, 2009).

indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." Bounds v. Smith, 430 U.S. 817, 824-25 (1977). Our sister Courts of Appeals have similarly rejected the argument that a simultaneous approach could violate prisoners' access to the courts. See, e.g., Pinson, 761 F.3d at 9; Lefkowitz, 146 F.3d at 612 ("[W]e agree with our fellow circuits that these fee provisions do not deny prisoners constitutionally guaranteed access to courts.").

The Court of Appeals in Torres raised a different ground for fearing that simultaneous recoupment would bar access to the courts, expressing concern that a prisoner who was required to pay 100% of his inmate account funds to service his filing fee obligations would not be able to engage in further legal action. But the Court of Appeals for the District of Columbia Circuit effectively addressed this concern in Pinson, explaining that "the PLRA's safety-valve provision, § 1915(b)(4), separately" ensures that insufficient funds will not bar inmates from bringing suit. Pinson, 761 F.3d at 8. Section 1915(b)(4) provides that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." Section 1915(b)(2) provides additional protection, because it provides for collection of fees only where a prisoner's account exceeds $10.

In light of prisons' obligations to provide inmates with supplies necessary for humane confinement and meaningful access to the courts, and considering the statutory safeguards the PLRA provides for destitute inmates, I conclude that the canon of constitutional avoidance does not compel sequential recoupment.

II.

For the foregoing reasons, I respectfully dissent.